UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JEROME BALDYGA | : | |
|    Plaintiff | : | |
| | : | Case No. 3:06cv0697 (WWE) |
|    v. | : | |
| | : | |
| CITY OF NEW BRITAIN | : | |
| and JOSEPH CARILLI | : | |
|    Defendants | : | September 27, 2007 |

MEMORANDUM OF LAW
IN SUPPORT OF THE DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT

I.    INTRODUCTION

The instant matter arises from a complaint filed by the plaintiff, Jerome Baldyga, against the defendants, City of New Britain and Joseph Carilli, on May 3, 2006.  The plaintiff's complaint contains six counts.  Count One of the plaintiff's complaint is directed to both defendants and alleges a denial of equal protection in violation of the Fourteenth Amendment of the United States Constitution, 42 U.S.C. §1983.  Count Two of the plaintiff's complaint is directed to both defendants pursuant to 42 U.S.C. §1983 and alleges a violation of the First Amendment of the United States Constitution.  Count Three is directed to the defendant City of New Britain pursuant to Section 31-51q of the Connecticut General Statutes and alleges retaliation for the exercise of plaintiff's First

Amendment rights.  Count Four is directed to the defendant City of New Britain and alleges retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e et seq.  Count Five is directed to both defendants pursuant to 42 U.S.C. §1983 and alleges a denial of due process in violation of the Fourteenth Amendment of the United States Constitution.  Count Six is directed to the defendant City of New Britain and alleges discrimination in violation of the Americans with Disabilities Act, 42 U.S.C. §12101.

II.     ARGUMENT

A.     FACTS

        The Defendants' Local Rule 56(a)1 Statement of Undisputed Facts submitted pursuant to Local Rule 56(a)(1) constitutes the facts of this case and is incorporated herein by reference.

B.     STANDARD

        Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law".  Fed. R. Civ. P. 56(c).  In considering a motion for summary judgment, the court's responsibility is not to resolve undisputed issues of fact but to assess whether there are any factual issues to be tried while resolving ambiguities and drawing reasonable inferences against the moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50, 106 S.Ct. 2505 (1986).  The summary

judgment procedure is not a disfavored procedural shortcut, but an integral part of the Federal Rules as a whole.  Celotex Corp. v. Catrettt, 477 U.S. 317, 327, 106 S.Ct. 2548 (1986).  In adjudging a motion for summary judgment, the "mere existence of factual issue -- where these issues are not material to the claims before the court -- will not suffice to defeat a motion for summary judgment".  Quarles v. General Motors Corp., 758 F.2d 839, 840 (2d cir. 1985).

"[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  Consequently, "conclusory statements, conjecture, or speculation" will not defeat summary judgment.  Kulak v. City of New York, 88 F.3d 63, 71 (2d Cir. 1996).  Similarly, "[m]etaphysical doubt, conjecture, or surmise cannot . . . defeat the motion." Halpern v. Federal Bureau of Investigation, 181 F.3d 279, 287 (2d Cir. 1999).  Even when the underlying events in a case are not in genuine dispute, but the characterization and application of a legal test are disputed, the contested issue may still be ripe for adjudication by way of summary judgment.  Newell Companies, Inc. v. Kenney Manufacturing Company, 864 F.2d 757, 763 (Fed. Cir. 1988), cert denied, 493 U.S. 814, 110 S.Ct. 62 (1989).

III. DISCUSSION

1.    **THE DEFENDANT CITY OF NEW BRITAIN IS ENTITLED TO JUDGMENT AS A MATTER OF LAW AS TO COUNTS ONE, TWO AND FIVE AS A MUNICIPALITY CAN NOT BE HELD LIABLE UNDER A RESPONDEAT SUPERIOR THEORY.**

"[A] municipality cannot be held liable solely because it employs a tortfeasor – or, in other words, a municipality cannot be held liable under Section 1983 on a respondent superior theory."  Monell v. Department of Social Services, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).  Rather, a plaintiff must show an official policy or custom that caused the plaintiff to be subjected to the denial of a constitutional right.  Id., at 693, 98 S.Ct. 2018; Zahra v. Town of Southold, 48 F.3d 674, 685 (2d Cir. 1995).  "[L]iability under Monell may be premised on any of three theories:  (1) employee was acting pursuant to an expressly adopted official policy; (2) employee was acting pursuant to a longstanding practice or custom; or (3) employee was acting as a 'final policymaker'." Pembaur v. City of Cincinnati, 475 U.S. 469, 497, 106 S.Ct. 1292, 89 L.Ed.2d 456 (1986).  To show that an employee is a final policymaker, "the Court must 'ask whether the government official is a final policy-maker for the local government a particular area, or on the particular issue' involved in the action".  Id. at 481.

To state a claim for municipal liability under Monell, plaintiff must allege and prove the following three elements: "(1) an official policy or custom that (2) caused the plaintiff to be subjected to (3) a denial of a constitutional right."  Batista v. Rodriguez, 702 F.2d 393, 397 (2d Cir. 1983).  "[M]unicipal liability under Section 1983 attaches where and only where a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question."  Pembaur v. Cincinatti, 475 U.S. 469, 483, 106 S. Ct. 1292, 89 L.Ed.2 452 (1986).

4

The plaintiff has failed to allege an official custom or policy.  Furthermore, pursuant to Section 4.2(B) and Section 14.5 of the Agreement between the City of New Britain and Local 1186, American Federation of State, County and Municipal Employees, Council 4, AFL-CIO (hereinafter referred to as the "collective bargaining agreement"), the defendant Joseph Carilli was not the final policymaker with respect to the plaintiff's termination which is the area involved in this action.  (Defendants' Statement of Undisputed Facts, Paragraph 65)  Rather, the plaintiff was a probationary employee.  (Defendants' Statement of Undisputed Facts, Paragraph 63)  Pursuant to Section 4.2(B) of the collective bargaining agreement, the Personnel Director is the final policymaker with respect to termination of probationary employees.  (Defendants' Statement of Undisputed Facts, Paragraph 65)  Even if the plaintiff was not a probationary employee pursuant to Section 14.5 of the collective bargaining agreement, the appointing authority is the final policymaker with respect to the termination of non-probationary employees.  (Defendants' Statement of Undisputed Facts, Paragraph 68) Section 5-2(d) of the Charter of the City of New Britain provides that the Mayor is the appointing authority of all employees.  (Defendants' Statement of Undisputed Facts, Paragraph 70)

For these reasons, the defendant City of New Britain is entitled to judgment as a matter of law with respect to Counts One, Two and Five of the plaintiff's Complaint.

2.    **THERE IS NO CREDIBLE EVIDENCE THAT THE DEFENDANTS DENIED THE PLAINTIFF EQUAL PROTECTION.**

Count One of the plaintiff's complaint is brought pursuant to 42 U.S.C. §1983 and alleges that the defendants denied the plaintiff equal protection in violation of the Fourteenth Amendment of the United States Constitution in that they singled plaintiff out for unfair and intentionally discriminatory treatment compared to other similarly situated employees, that there was no rational basis for the disparate treatment and that the actions were intentional, malicious, wilful, wanton and in reckless disregard of plaintiff's rights. (Complaint, Count One, Paragraphs 31, 32 and 34)

"The Fourteenth Amendment to the United States Constitution provides that 'no state shall . . . deny to any person within its jurisdiction the equal protection of the laws'." Bond v. City of Middletown, 389 F.Supp.2d 319, 333 (D.Conn. 2005)(citing the United States Constitution, Amend. XIV, §1). The Supreme Court has held that the Equal Protection clause is "'essentially a direction that all persons similarly situated should be treated alike'." Id. (quoting City of Cleburne, Tex. v. Cleburne Living Center, Inc., 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985)).

CLASS OF ONE

Equal protection claims may be brought by individuals under a "class of one" theory of discrimination "where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment". Village of Willowbrook v. Olech, 528 U.S. 562, 564, 120 S.Ct. 1073 (2000). "In order to succeed on a 'class of one' claim, the level of similarity between plaintiffs and the persons with whom they compare themselves must be extremely high." Goldfarb v. Town of West Hartford, 474 F.Supp.2d 356, 367 (D.Conn.

2007)(citing <u>Nielson v. DiAngelis</u>, 409 F.3d 100, 104 (2d Cir. 2005)).  "[T]he standard for determining whether another person's circumstances are similar to the plaintiff's must be . . . whether they are prima facie identical."  <u>Id</u>. (citing <u>Nielson v. DiAngelis</u>, 409 F.3d 100, 105 (2d Cir. 2005), and <u>Inturri v. City of Hartford</u>, 365 F.Supp.2d 240, 251 (D. Conn. 2005)).

 "The Second Circuit requires a 'class of one' plaintiff show that:  (i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy, and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendant acted on the basis of a mistake."  <u>Id</u>.  The plaintiff must also prove that the defendants had knowledge of the others that were similarly situated with the plaintiff.  <u>Giordano v. New York</u>, 274 F.3d 740, 751 (2d Cir. 2001).

 The plaintiff can not point to other employees who were similarly situated to him in all material aspects.  (Defendants' Statement of Undisputed Facts, Paragraphs 103, 108, 109, 110, 111, 112, 113, 114, 115, 116 and 117)  Furthermore, the Defendants' Statement of Undisputed Facts together with the affidavits and exhibits attached thereto show that the plaintiff can not meet the similarly situated prong.

 The plaintiff was a general laborer in the Public Works Department. (Defendants' Statement of Undisputed Facts, Paragraph 1)  The plaintiff was not similarly situated to any other general laborer in the Public Works Department for the following reasons:  1. The plaintiff in his employment with the defendant City of New Britain from June 1,

1994, to March 5, 2004, a period just short of 10 years, had a long history of discipline. (Defendants' Statement of Undisputed Facts, Paragraphs 5, 6, 7, 8, 9, 10, 11, 12, 28, 73, 83, 84, 85 and 89)  2.  No other general laborer in the Public Works Department had a discipline history which was as extensive as the plaintiff's. (Defendants' Statement of Undisputed Facts, Paragraphs 108 and 117)  3.  The plaintiff himself admitted that he did not know of any other employee of the City of New Britain who had the same history of discipline as him and was not terminated. (Defendants' Statement of Undisputed Facts, Paragraph 108)  4.  There were other employees who received discipline for use of City vehicles for personal reasons, use of sick time and tardiness. (Defendants' Statement of Undisputed Facts, Paragraphs 109, 110, 111, 112, 113, 114, 115 and 116)

In the City of New Britain's appeal of the awarding of unemployment benefits to the plaintiff and the fact finding hearing on his July 12, 2004, Commission on Human Rights and Opportunities complaint, the plaintiff made allegations that similarly situated employees were not disciplined, however, the plaintiff failed to provide any specific evidence to support that allegation. (Defendants' Statement of Undisputed Facts, Paragraphs 95, 96, 97, 98, 99, 100, 101, 102, 103, 104, 105, 106, 107 and 108)  The plaintiff did introduce three (3) photographs of Public Works vehicles parked in front of a residence, in a residence driveway and in a Dunkin Donuts parking lot. (Defendants' Statement of Undisputed Facts, Paragraph 108)  However, these photographs were taken at a time when the plaintiff was no longer employed by the defendant City of New Britain and when the defendant Carilli was no longer Director of Public Works. (Defendants' Statement of Undisputed Facts, Paragraph 108)  In addition, the plaintiff

8

stated that he did not bring these alleged violations to the attention of the City of New Britain.  (Defendants' Statement of Undisputed Facts, Paragraph 108)  Accordingly, these photographs can not support the plaintiff's equal protection claim.

Furthermore, the defendant Carilli as Director of the Public Works Department addressed any misconduct which was brought to his attention.  (Defendants' Statement of Undisputed Facts, Paragraph 113)  In fact, during his tenure as Director of Public Works of the City of New Britain from January 11, 1991, to September 3, 2004, excluding the plaintiff's discipline the defendant Carilli recommended the termination of approximately 5 employees, issued approximately 31 suspensions, and disciplined 12 employees for sick time abuse.  (Defendants' Statement of Undisputed Facts, Paragraphs 109, 110, 111, 112, 113, 114, 115 and 116)  In addition, one of the employees whose termination the defendant Carilli recommended was Carleton Knight.  (Defendants' Statement of Undisputed Facts, Paragraph 112)  Mr. Knight's termination was recommended for his operating a City vehicle without authority, being involved in a collision and being cited by the police.  (Defendants' Statement of Undisputed Facts, Paragraph 112)

Accordingly, the plaintiff can not prove that there were other similarly situated employees in all material respects.

The plaintiff can not prove that disparate treatment was intentional and no rational basis.

Even if the plaintiff met the similarly situated prong, the plaintiff can not prove that the disparate treatment was intentional with no rational basis.  "A government official's

9

decision 'can be considered irrational only when [the official] acts with no legitimate

reason for [his or her] decision." Tuskowski v. Griffin, et al, 359 F.Supp.2d 225, 228

(D.Conn. 2005)(citing Harlsen Associates v. The Incorporate Villatge of Mineola, 273

F.3d 494, 500 (2d Cir. 2001)).  "Mere failure to prosecute other offenders does not

establish a denial of equal protection."  LeClair v. Saunders, 627 F.2d 606, 608-11 (2d

Cir. 1980)(citing Railway Express Agency, Inc. v. New York, 336 U.S. 106, 109-110

(1949) and United States v. Rickenbacker, 309 F.2d 462 (2d Cir. 1962) cert. denied 371

U.S. 962 (1963)).  "[E]qual protection does not require that all evils of the same genus

be eradicated or none at all."  Bond v. City of Middletown, 389 F.Supp.2d 319, 334

(2005)(citations omitted).

     The defendants' actions were rational in light of the plaintiff's discipline history,

work performance and repeated violation of work rules.  The plaintiff had an extensive

discipline history and was disciplined several times concerning his use of City vehicles

for personal reasons. (Defendants' Statement of Undisputed Facts, Paragraphs 5, 6, 7,

8, 9, 10, 11, 12, 28, 73, 83, 84, 85 and 89)  On June 7, 1996, the plaintiff, his Union and

the City of New Britain entered into a Memorandum of Agreement and plaintiff agreed to

receive a three (3) day suspension for being in possession of and/or consumption of

alcoholic beverages during normal work hours in violation of Rule XIII A.6 of the Civil

Service Rules and Section I.D. of the Department of Public Works Rules. (Defendants'

Statement of Undisputed Facts, Paragraph 5)  On August 20, 1996, the plaintiff

received a letter of warning for an August 8, 1996, incident when he failed to take his

break at the work site and used a City vehicle to travel to his home.  (Defendants'

Statement of Undisputed Facts, Paragraph 6)  That letter stated:

> "[y]ou are cautioned that not only can the presence of a city truck at your
> residence during the workday readily lead to the worse case assumption
> by any citizen, but it is violative of Department Rules . . . "[o]f greater
> concern were your statements of August 19 that you were unaware that
> Department rules existed, and further did not know the substance of
> specific sections which were cited . . . However the record reflects that you
> were recently disciplined for violation of Department Rules and at the that
> time you made no claim of lack of knowledge of the existence of these
> Rules nor of any specifics contained therein.  Consequently I am of the
> opinion that your statements of August 19 were an attempt to cloud the
> facts and mislead me.  This deliberate action raises doubt as to your
> veracity on not only this matter but others.
>
> Therefore, I issue this letter of warning, cautioning you that any future
> violations on rules/regulations will lead to more sever disciplinary action.

(Defendants' Statement of Undisputed Facts, Paragraph 6)

On June 22, 1998, the plaintiff was suspended for five (5) days and placed on an

initial probationary period commencing June 22, 1998, through June 30, 1999, for

falsification of domicile on his employment application.  (Defendants Statement of

Undisputed Facts, Paragraph 7)

On May 19, 2000, the plaintiff was involved in a motor vehicle accident and was

arrested for driving under the influence of alcohol which resulted in the loss of his

driver's license.  (Defendants Statement of Undisputed Facts, Paragraph 8)  As a result,

the plaintiff and his Union entered into a Memorandum of Agreement in which the

plaintiff agreed to the following:  1) a reduction in rank to the classification of Maintainer,

2) no eligibility for overtime until his license and CDL were restored, 3) a one year initial

probation period in which he would be considered a new entry level employee, 4) a ten

11

(10) day suspension, five (5) days of which were served and five (5) days were held in abeyance, and 5) a requirement to participate and complete the Employee Assistance Program.  (Defendants Statement of Undisputed Facts, Paragraph 8)

On June 25, 2001, the plaintiff was suspended for seven (7) work days without pay for two motor vehicle accidents in which the Plaintiff was involved.  (Defendants Statement of Undisputed Facts, Paragraph 9)  Five (5) of the seven (7) days were held in abeyance for the June 25, 2001, incident, so the plaintiff served a two (2) day suspension which was grieved through the collective bargaining process and reduced to a one (1) day suspension by an Arbitrator.  (Defendants Statement of Undisputed Facts, Paragraph 9)

On October 1, 2001, the plaintiff received a letter of caution for leaving the work site in a private vehicle without authorization.  (Defendants Statement of Undisputed Facts, Paragraph 10)  The plaintiff was advised that his action was in direct violation of Civil Service and Department Rules and that future misconduct would lead to serious discipline.  (Defendants Statement of Undisputed Facts, Paragraph 10)

On September 24, 2002, the plaintiff was suspended and placed on initial probationary status until October 1, 2004, for a May 24, 2002, incident in which he attended a local Greek Festival for personal reasons on City time in a City vehicle and a June 10, 2002, the plaintiff went to a rental property that he owned in New Britain on City time with a City vehicle.  (Defendants Statement of Undisputed Facts, Paragraphs 11, 12, 13, 14, 28, 29, 52 and 53)

12

On June 23, 2003, the plaintiff was notified of a fact finding hearing concerning his attendance from March 19, 2003, through June 4, 2003, in which he was tardy twenty-five (25) times.  (Defendants' Statement of Undisputed Facts, Paragraph 51)

On October 7, 2003, the plaintiff signed a General Release and Agreement in which he agreed that any and all discipline taken against the plaintiff up to and including September 24, 2002, decision which included initial probationary status until October 1, 2004, would remain part of his file.  (Defendants' Statement of Undisputed Facts, Paragraphs 61, 62 and 63)  Accordingly, the plaintiff agreed that he was a probationary employee through October 1, 2004.  (Defendants' Statement of Undisputed Facts, Paragraphs 61, 62 and 63)

Following the execution of the General Release and Agreement, the plaintiff reported late to work on fifteen days over a nine week period from October 15 to December 23, 2003.  (Defendants Statement of Undisputed Facts, Paragraph 71)  Even the plaintiff's performance evaluation reflected the areas of concern. On September 30, 2003, the plaintiff's performance evaluation form was completed by plaintiff's supervisor, Foreperson Larry Hinchcliffe, who is a member of the same bargaining unit as the plaintiff.  (Defendants' Statement of Undisputed Facts, Paragraphs 54, 55, 56, 57, 58, 59 and 60)

In the September 30, 2003, evaluation, the plaintiff was rated as "Needs Improvement" in the categories of Reporting to Work, Promptness, Dependability, Initiative and Overall Evaluation.  (Defendants' Statement of Undisputed Facts, Paragraph 55)  Some of Mr. Hinchcliffe's comments in that evaluation were as

follows: in the "Reporting to Work" category, "Jerry is frequently late reporting for

his assignments at 7:00 a.m."; in the "Dependability" category, "Jerome has to be

told and watched on most assignments"; and in the "Initiative" category, "Jerome's

attitude has got to improve". (Defendants' Statement of Undisputed Facts,

Paragraph 56)

On September 30, 2003, the plaintiff's General Foreperson, Steve

Cowperthwaite, who is also a member of the same bargaining unit as the plaintiff,

signed the plaintiff's evaluation stating "I agree with supervisor's comments."

(Defendants' Statement of Undisputed Facts, Paragraph 57) On October 1,

2003, the plaintiff signed the evaluation and made the following comment: "I'm

sorry I let my supervisor down. I disagree with some of the evaluation. In the

future I will work to improve toward their standards." (Defendants' Statement of

Undisputed Facts, Paragraph 58)

On November 7, 2003, the plaintiff once again left his work site without

permission and used a City vehicle without permission. (Defendants' Statement of

Undisputed Facts, Paragraph 73) On December 3, 2003, the plaintiff's performance

was again evaluated. (Defendants' Statement of Undisputed Facts, Paragraphs 74, 75,

76, 77 and 78) This evaluation was not completed by the defendant Carilli as alleged

by the plaintiff but rather by the plaintiff's supervisor, Larry Hinchcliffe. (Defendants'

Statement of Undisputed Facts, Paragraph 74) In the December 3, 2003, performance

evaluation, the plaintiff received a "Needs Improvement" rating in the Reporting to Work,

Dependability and Initiative categories and an "Unacceptable" rating in the Promptness

and Overall Evaluation categories.  (Defendants' Statement of Undisputed Facts,

Paragraph 75)

Some of Mr. Hinchcliffe's comments in the plaintiff's December 3, 2003,

performance evaluation were similar to the September 30, 2003, evaluation:  in the

Reporting to Work category, "Jerome is still late reporting at 7:00 a.m. for his

assignments"; in the Promptness category, "17 Late Punches"; in the Dependability

category, "Jerome has to be told and watched on all assignments".  (Defendants'

Statement of Undisputed Facts, Paragraph 76)  In the plaintiff's December 3, 2003,

performance evaluation, Steve Cowperthwaite, General Foreperson, stated:  "Jerome

needs to improve in many areas.  Most elements are in his control and he needs to

realize that he is the one who has to change."  (Defendants' Statement of Undisputed

Facts, Paragraph 77)

On December 18, 2003, the defendant Joseph F. Carilli, Director of Public Works,

recommended the termination of the plaintiff based upon the plaintiff's unwillingness to

adhere to the rules of his department, his tardiness and his work performance.

(Defendants' Statement of Undisputed Facts, Paragraph 79)  The December 18, 2003,

recommendation was made to John R. Byrne, Personnel Director, in accordance with

Section 4.2(B) of the Agreement between the City of New Britain and plaintiff's Union,

Local 1186, as the plaintiff was on initial probation until October 1, 2004.  (Defendants'

Statement of Undisputed Facts, Paragraph 80)

Although the Personnel Director had the power to terminate pursuant to the

collective bargaining agreement, Mr. Byrne typically consulted the Mayor of the City of

New Britain on such matters. (Defendants' Statement of Undisputed Facts, Paragraph 81) Mr. Byrne consulted Mayor Timothy T. Stewart concerning the defendant's recommendation. (Defendants' Statement of Undisputed Facts, Paragraph 81) The Mayor informed Mr. Byrne that the plaintiff had called the Mayor concerning the recommendation of the defendant Carilli. (Defendants' Statement of Undisputed Facts, Paragraph 82) The Mayor requested that the recommendation be delayed in order to give plaintiff an opportunity to improve. (Defendants' Statement of Undisputed Facts, Paragraph 82)

Despite his knowledge that he was being given an opportunity to improve his behavior, on January 27, 2004, the plaintiff was found reading the newspaper instead of being where he was supposed to be which was getting his work assignment. (Defendants' Statement of Undisputed Facts, Paragraph 83) In addition, on February 4, 2004, the plaintiff used a City snow plow during a snow storm to leave his work site and go to his rental property to get cigars. (Defendants' Statement of Undisputed Facts, Paragraph 84) While doing this, plaintiff lost control of the plow truck and hit a parked vehicle and a private fence causing damage. (Defendants' Statement of Undisputed Facts, Paragraph 84) The plaintiff took this action with full knowledge that his termination had been recommended but was delayed at the Mayor's request to give him an opportunity to improve and with full knowledge that he had been previously disciplined for personal use of City vehicles.

While the plaintiff's conduct was being investigated, the plaintiff was transferred to the City Yard on February 19, 2004. (Defendants' Statement of Undisputed Facts,

16

Paragraph 88)  On February 20, 2004, one day after being assigned to the City Yard, the plaintiff was issued a written warning for leaving his work site in violation of his supervisor's direction.  (Defendants' Statement of Undisputed Facts, Paragraph 89)

On February 27, 2004, the defendant Carilli wrote to John R. Byrne, Personnel Director, and requested that his December 18, 2003, recommendation be pursued given the fact that during the period beginning January 26, 2004, the plaintiff had been formally advised by supervisors on two occasions that his workplace conduct was inappropriate; failed to report to work and was charged with unauthorized absence without pay; used sick leave in conjunction with weekends and used a City truck for personal reasons, was involved in an accident, caused damage to a motor vehicle and fence and was cited by the police for the accident.  (Defendants' Statement of Undisputed Facts, Paragraph 90)  The Personnel Director terminated the plaintiff's employment effective March 5, 2004.  (Defendants' Statement of Undisputed Facts, Paragraph 92)

The defendants' actions were clearly rational and legitimate given the plaintiff's disciplinary history, his repeated wilful refusal to follow the Department Work Rules and his obvious disregard of the opportunity he was given to improve.  (Defendants' Statement of Undisputed Facts, Paragraphs 79, 90, 91, 93 and 94)  Accordingly, even if he could identify a similarly situated employee, the plaintiff can not prove that there was no rational basis for the treatment.  For all of these reasons, the plaintiff can not support as a matter of law a "class of one" claim.

SELECTIVE PROSECUTION

In addition, "the Second Circuit has provided an equal protection argument that plaintiffs may use as an alternative to the 'class of one' standard set forth by the Supreme Court in Olech.  In this circuit, a plaintiff may bring an equal protection claim by demonstrating 'selective prosecution'."  (Footnote omitted.)  Goldfarb v. Town of West Hartford, 474 F.Supp.2d 356,368 (D. Conn. 2007).  "To succeed in an equal protection action based upon a selective prosecution, plaintiff must both '(1) that they were treated differently from other similarly situated individuals, and (2) that such differential treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights or malicious or bad faith intent to injure a person'."  (citations omitted)  Goldfarb v. Town of West Hartford, et al, 474 F.Supp.2d 356, 368 (D.Conn. 2007).

For all the reasons discussed in the Class of One section above, the defendants contend that the plaintiff's evidence can not support a selective prosecution claim as the plaintiff was not similarly situated to any general laborer and the defendants' actions were rational and legitimate in light of the plaintiff's discipline history, repeated willful refusal to follow the Department Work Rules and his obvious disregard of the opportunity he was given to improve.  Furthermore, the plaintiff can not show malice or an intention to harm.

In order to show malice, the plaintiff must prove that the defendants' actions were malicious and "wholly unrelated" to legitimate objectives.  Bizzarro v. Miranda, 394 F.3d 82, 87 (2d Cir. 2005).  The court in Bizzarro noted

> The branch of equal protection law that protects individuals from unequal treatment motivated by "malicious or bad faith intent to injure" provides protection from adverse governmental action that is not motivated by "legitimate governmental objectives". Esmail v. Macrane, 53 F.3d 176, 180 (7th Cir. 1995) (Poser, J.). If the motivation to punish is to secure compliance with agency objectives, then by definition the motivation is not spite, or malice, or a desire to "get" [someone] for reasons wholly unrelated to any legitimate state objective.

Id. The plaintiff can not show malice as there is nothing irrational or arbitrary in the defendants' decision to terminate his employment given his extensive discipline history and complete disregard for the rules of his department. In addition, the plaintiff can not show malice as the decision to terminate was made by Personnel Director John R. Byrne and the plaintiff makes no allegation that Mr. Byrne had any animosity or malice toward the plaintiff. In fact, Mr. Byrne delayed a decision on the December 18, 2003, recommendation to terminate the plaintiff's employment at the Mayor's request in order to give the plaintiff an opportunity to improve. If Mr. Byrne had any malice or animosity toward the plaintiff, he would have terminated the plaintiff's employment upon receipt of the December 18, 2003, recommendation. However, Mr. Byrne did not do so. It was only after the plaintiff continued to violate the Department Rules that the decision to terminate was made. Therefore, the defendants are entitled to judgment as a matter of law with respect to Count One of the plaintiff's complaint.

3. **THE PLAINTIFF'S ALLEGED PETITION DOES NOT INVOLVE A PUBLIC CONCERN AS A MATTER OF LAW AND, THEREFORE, IS NOT PROTECTED BY THE FIRST AMENDMENT BY AND THROUGH SECTION 1983 AND/OR SECTION 31-51q OF THE CONNECTICUT GENERAL STATUTES. FURTHERMORE, THERE IS NO CREDIBLE EVIDENCE THAT THE PLAINTIFF WAS RETALIATED AGAINST FOR HIS FIRST AMENDMENT PROTECTED CONDUCT.**

In Count Two of his complaint which is brought pursuant to 42 U.S.C. §1983, the plaintiff alleges that the defendants, City of New Britain and Joseph Carilli, took adverse action against him in retaliation for First Amendment protected conduct. (Complaint, Count Two, Paragraph 32) The plaintiff alleges that his First Amendment protected conduct is the filing of complaints of discriminatory conduct to the Commission on Human Rights and Opportunities and Equal Employment Opportunity Commission which constituted a petition to redress grievances. (Complaint, Count Two, Paragraph 31) Count Three of the plaintiff's complaint which is brought pursuant to Section 31-51q of the Connecticut General Statutes alleges that "[b]y virtue of his submission of complaint of discriminatory conduct, plaintiff petitioned the government for redress of grievances. Thus, plaintiff engaged in conduct that is expressly protected under the First Amendment of the United States". (Complaint, Count Three, Paragraph 31)

"[A] public employee who seeks to recover on the ground that he has been discharged because of the exercise of his First Amendment speech rights must establish, as an initial matter, that his speech may be 'fairly characterized as constituting speech on a matter of public concern'." White Plains Towing Corp. v. Patterson, 991 F.2d 1049, 1058 (1993), cert. denied, 510 U.S. 865 (1993)(citing Rankin v. McPherson, 483 U.S. 378, 384, 107 S.Ct. 2891, 2897 (1987), quoting Connick v. Myers, 461 U.S. 138, 146, 103 S.Ct. 1684, 1689 (1983); Ezekwo v. NYC Health & Hospitals Corp., 940 F.2d 775, 781 (2d Cir.), cert. denied, 502 U.S. 1013, 112 S.Ct. 657, 116 L.Ed.2d 749 (1991)). "When employee expression cannot be fairly considered as relating to any matter of political, social, or other concern to the community,

government officials should enjoy wide latitude in managing their office, without intrusive oversight by the judiciary in the name of the First Amendment." Id. (citing Connick v. Myers, 461 U.S. at 146, 103 S.Ct. at 2897 (1968)).

"The First Amendment right to petition the government for a redress of grievances, which is 'an assurance of a particular freedom of expression' is 'generally subject to the same constitutional analysis' as the right to free speech. (Internal citations omitted.) Id. (citing Wayde v. United States, 470 U.S. 598, 610 n.11, 105 S.Ct. 1524, 1532 n. 11, 84 L.Ed.2d 547 (1987)). Thus, right-to-petition claims are also governed by the above interest-balancing principle. Id. (citation omitted) See also, Cobb v. Pozzi, 363 F.3d 89, 104-105 (2004).

Similarly, "[s]ection 31-51q protects from retaliatory discharge an employee who invokes constitutionally guaranteed free speech rights that, in turn, protect statements that address a matter of public concern." Daley v. Aetna Life & Casualty Co., 249 Conn. 766, 776, 734 A.2d 112 (1999). "Those constitutional provisions safeguard statements made by an employee that address a matter of public concern, but provide no security with respect to statements that address wholly personal matters." Id. at 778 (fn2).

"Whether an employee's speech addresses a matter of public concern is a question of law to be determined in light of the content, form, and context of a given statement, as revealed by the whole record'." (Internal citations omitted.) Luck v. Mazzone, 52 F.3d 475, 476 (2d Cir. 1995)(citing Connick v. Myers, 461 U.S. AT 147-148, 103 S.Ct. at 1690-91 (1983); Sheppard v. Beerman, 18 F.3d 147, 151 (2d Cir. 1994), cert. denied, 513 U.S. 816, 115 S.Ct. 73, 103 L.Ed.2d 28 (1994).

"An employee's speech addresses a matter of public concern when the speech

can be fairly considered as relating to any matter of political, social, or other concern to

the community." DiMartino v. Richens, 263 Conn. 639, 667, 822 A.2d 205 (2003).

"Statements about safety matters affecting the general public have been determined to

be matters affecting the general public have been determined to be matters of public

concern." Streater v. Maier, Superior Court, Judicial District of New Haven, Docket No.

CV 03 0473265 (June 16, 2004, Skolnick, J.).

In Emerick v. Kuhn, 52 Conn. App. 724, 743-744 (1999), the Connecticut

Appellate Court discussed the requirements of pursuing a Section 31-51q claim and

concluded:

> To be protected by the first amendment, 'the speech must be on a
> matter of public concern, and the employee's interest in expressing
> [himself] on this matter must not be outweighed by any injury the speech
> could cause to employee relationships. Waters v. Churchill, 511 U.S.
> 661, 668, 114 S. Ct. 1878, 128 L. Ed. 2d 686 (1994). Restrictions on
> employee-employer speech are more justified than restrictions on the
> speech of the public . . . it is a matter between him and his employer
> and, thus, is not protected speech.

The plaintiff alleges that the right to petition, namely, his filing of complaints with

the Commission on Human Rights and Opportunities and Equal Employment

Opportunity Commission, as his protected conduct. However, this conduct does not

involve a public concern but rather a private/personal one. In White Plains Towing

Corp. v. Patterson, 991 F.2d 1049 (1993), cert. denied, 510 U.S. 865, 114 S.Ct. 185,

126 L.Ed.2d 144 (1993), the Second Circuit found that the vast majority of plaintiff's

alleged protected conduct consisting of demands and complaints seeking an increase in

22

towing referrals and were private commercial grievance that "do not appear to relate to any matter of political, social or other concern to the community and hence could not provide a basis for recovery." Id. at 1060.

In Valot v. Southeast Local School District Board of Education, et al, 107 F.3d 1220 (6th Cir. 1997), cert. denied, 522 U.S. 861, 118 S.Ct. 164, 139 L.Ed.2d 108 (1997), the Court found that "[w]hile the availability of unemployment compensation is a matter of public concern, Plaintiff's request for such benefits during the summer months while they were unemployed is far more a matter of private interest than public concern". Id. at 1227.  The Court in Valot went on to cite the following cases in support of its finding:  White Plains Towing Corp. v. Patterson, 991 F.2d 1049, 1059 (2d Cir.), cert. denied, 510 U.S. 865, 114 S.Ct. 185, 126 L.Ed.2d 144 (1993); Hoffman v. Mayor, Councilmen & Citizens of Liberty, 905 F.2d 229, 233 (8th Cir. 1990); Rathjen v. Litchfield, 878 F.2d 836, 842 (5th cir. 1989); Day v. South Park Indep. Sch. Distr., 768 F.2d 696, 700 (5th Cir. 1985); Altman v. Hurst, 734 F.2d 1240, 1244 (7th Cir.), cert. denied, 469 U.S. 982 (1984); Gearhart v. Thorne, 768 F.2d, 1072, 1073 (9th Cir. 1985); Renfroe v. Kirkpatrick, 722 F.2d 714, 715 (11th Cir.), cert. denied, 469 U.S. 823 (1984).

Similar to Valot and White Plains Towing Corp., the plaintiff's filing of complaints with the Commission on Human Rights and Opportunities and Equal Employment Opportunity Commission concerning his employment does not relate to any matter of political, social or other concern to the community but rather is a private interest. Accordingly, as the plaintiff's right to petition did not involve a public concern, the defendants are entitled to judgment as a matter of law as to Counts Two and Three.

23

Furthermore, even if the court finds that the plaintiff's petition did involve a public concern, the plaintiff was not terminated as a result of any protected activity. (Defendants' Statement of Undisputed Facts, Paragraph 79, 90, 91, 93 and 94)  As was fully discussed in the previous section concerning plaintiff's equal protection claim, the plaintiff was terminated as a result of his repeated violations of work rules, his work performance and his past discipline history.  (Defendants' Statement of Undisputed Facts, Paragraphs 79, 90, 91, 93 and 94)  In addition, the plaintiff alleges that he was terminated as a result of complaint he filed with the Commission on Human Rights and Opportunities on June 10, 2003.  A complaint which the Commission on Human Rights and Opportunities found there was no reasonable possibility that investigating the plaintiff's complaint would result in a finding of reasonable cause and that the plaintiff's complaint should be dismissed as the facts were likely to show that

> 1. Respondent was not aware of Complainant's Hepatitis C condition until the medical report received in 2003.  In fact, Complainant states that he wanted to keep the fact that he suffers from Heapatitis C confidential.
> 2. Respondent did not perceive Complainant as an individual who has a physical disability, specifically Hepatitis C.
> 3. Complainant did engage in a protected conduct as defined by C.G.S. §46a-60(a)(4).
> 4. Complainant was disciplined because of his poor performance. Also, the disciplinary actions were in accordance with the Union contract.
> 5. Finally, Respondent's answer is truth.

(Defendants' Statement of Undisputed Facts, Paragraph 71)

Furthermore, on October 7, 2003, the City of New Britain entered into an Agreement and General Release with the plaintiff in which it agreed to "not pursue discipline against Baldyga for his tardiness prior to the date of the signing of this

Agreement and General Release nor for his alleged recent violation of department rules

and regulations in using City time and a City vehicle for personal reasons". (Exhibit 35,

Page 3, Paragraph 5) The City of New Britain entered into the Agreement and General

Release after the plaintiff had filed his June 10, 2003, Commission on Human Rights

and Opportunities complaint. Accordingly, it does not follow that the City of New Britain

would enter into the Agreement and General Release after he filed a Commission on

Human Rights and Opportunities complaint only to retaliate against the plaintiff for his

filing that complaint by terminating his employment.

It should also be noted that the Appeals Referee who heard the City of New

Britain's appeal concerning plaintiff's eligibility for unemployment compensation found

that

> "[t]he 'claimant repeatedly and deliberately violated the employer's work
> rules relating to the use of city owned vehicles and being off the work site
> without proper permission. The rules are reasonable effectively
> communicated and uniformly enforced. The claimant's excuse that he had
> his foreman's permission to take the plow to his home to retrieve cigars on
> the evening of the storm is unavailing. He knew that to do so was to again
> commit a violation for which he had been repeatedly warn; and his
> testimony makes clear his understanding that the foreman did not have
> the authority to allow him to break the rule, and that the foreman was
> reluctant to acknowledge the claimant's announced plan.
>
> The referee concludes that the circumstances surrounding the claimant's
> discharge disqualify him under the rule violation definition of wilful
> misconduct. It is also concluded that his repeated insubordination in
> failing to obey the employer's directives regarding use of its equipment
> also provokes the claimant's disqualification from benefits under the
> deliberate misconduct section of the controlling statute.

(Defendants' Statement of Undisputed Facts, Paragraph 100)

Furthermore, the Unemployment Compensation Board of Review found on the plaintiff's appeal that "[t]he claimant had a history of violating the rule and was clearly placed on notice by the Director of Public Works for further violation".  (Defendants' Statement of Undisputed Facts, Paragraph 103)  The Board further found that the claimant did not produce evidence that other employees violated the employer's rule against the personal use of vehicle and were not disciplined noting in a footnote:

> For example, although there was testimony that other employees reported to the employer that they saw the claimant at the Greek Festival, the claimant has not established that these individuals were on clock or that they were engaged in other than official business when they observed the claimant.

(Defendants' Statement of Undisputed Facts, Paragraph 103)

In addition, the Commission on Human Rights and Opportunities after a fact finding hearing on the plaintiff's second complaint dated July 12, 2004, found

> In conclusion, based on the aforementioned facts and the taking in consideration all the information in the file in its entirety this investigator concludes that the Respondent did not terminate Complainant because of his physical disability and/or in retaliation because he previously filed a complaint with CHRO.  Respondent terminated Complainant for his repeatedly violations of Respondent's policies and Complainant's long history of disciplines.

(Defendants' Statement of Undisputed Facts, Paragraph 108)

For these reasons, the defendants are entitled to judgment as a matter of law as to Counts Two and Three of the plaintiff's Complaint.

4.   **THERE IS NO CREDIBLE EVIDENCE THAT THE PLAINTIFF WAS RETALIATED AGAINST IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964**.

Count Four of the plaintiff's complaint alleges that by virtue of his submission of complaints of discriminatory conduct to the Commission on Human Rights and Opportunities and Equal Employment Opportunity Commission the plaintiff engaged in conduct protected under Title VII and was retaliated against in violation of Title VII of the Civil Rights Act of 1964. In order to establish a prima facie case of retaliation, Plaintiff must show by a preponderance of the evidence: "(1) participation in a protected activity known to the defendant; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action." Holt v. KMI-Continental Inc., 95 F.3d 123, 130 (2d Cir. 1996)(internal quotation marks omitted). The complaint "must set forth a 'particularized allegation relating to a causal connection between the flawed outcome and bias' and must point to 'particular circumstances' supporting an inference of bias, such as 'statements by members of the disciplinary tribunal, statements by pertinent . . . officials, or patterns of decision-making that also tend to show the influence of [age]'". Murray v. N.Y. Univ. Coll. of Dentistry, 57 F.3d 243, 251 (2d Cir. 1995)(quoting Yusuf v. Vassar College, 35 F.3d 709, 715 (2d Cir. 1994)).

The plaintiff may meet the first and second prong of this test in that he filed a complaint with the Commission on Human Rights and Opportunities on June 13, 2003, and was terminated on March 5, 2004. However, the plaintiff can not show a causal connection. The plaintiff has failed to point to any statements by the defendant Carilli or other evidence to support the inference of retaliation. In addition, the undisputed facts fail to support the plaintiff's allegation. Furthermore, the plaintiff's employment was

terminated by then Personnel Director John R. Byrne and the plaintiff has not made any allegation as to Mr. Byrne to support an inference of retaliation.

Furthermore, even if the plaintiff is found to have made a prima facie case, the defendants have offered a legitimate nondiscriminatory reason for the plaintiff's termination. As was fully discussed in the previous sections concerning plaintiff's equal protection claim and First Amendment claim, the plaintiff was terminated as a result of his repeated violations of work rules, his work performance and his past disciplinary history. (Defendants' Statement of Undisputed Facts, Paragraphs 79, 90, 91, 93 and 94) Furthermore, the plaintiff's filing of a Commission on Human Rights and Opportunities complaint played no role in the decision to terminate his employment. (Defendants' Statement of Undisputed Facts, Paragraphs 79, 90, 91, 93 and 94) Accordingly, the plaintiff can not establish a link between his filing of the Commission on Human Rights and Opportunities complaint and his termination.

The plaintiff does allege that the defendant Carilli took other actions against him such as:

a.   falsely evaluated Plaintiff's performance as "unacceptable" on or about December 3, 2003;

b.   arbitrarily compelled plaintiff to train new employees to perform his job functions and then reassigned Plaintiff to another work site where he had no meaningful work to perform, he was not allowed to leave the building and he had no opportunity to work overtime;

c.   singled Plaintiff out for warnings about personal use of City vehicles when it was common practice for other members of the Public Works department to use City vehicles to get coffee and run other personal errands;

d.   singled Plaintiff out for warnings about tardiness when it was common practice for other members of the Public Works department to arrive after the designated start time;

    e.    singled Plaintiff out for warnings about use of sick time when it was common practice for other members of the Public Works department to utilize sick time in conjunction with weekends;

    f.    persistently lobbied other City officials for Plaintiff's termination;

    g.    subjected Plaintiff to disciplinary action for going to his New Britain residence while on duty, which was off his assigned snow plowing route, despite the fact that Plaintiff had sought and received permission from his supervisor to do so."

(Complaint, Paragraph 29)  However, none of these actions constitute an adverse employment action.  An adverse employment action must be a "materially adverse change in the terms and conditions of employment . . . more disruptive than a mere inconvenience or an alteration of job responsibilities".  Patrolmen's Benevolent Association of City of New York v. Guiliani, 310 F.3d 43, 51 (2d Cir. 2002); Galabya v. N.Y. City Board of Education, 202 F.3d 636, 640 (2d Cir. 2000).  The allegations set forth by the plaintiff are not adverse employment actions.

For these reasons, the defendants are entitled to judgment as a matter of law as to Count Four of the plaintiff's Complaint.

## 5.   THE PLAINTIFF WAS NOT DENIED DUE PROCESS IN VIOLATION OF THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION AS HE WAS A PROBATIONARY EMPLOYEE.

Count Five of the plaintiff's complaint alleges that the plaintiff was deprived of his property interest in his continued civil service employment with the City of New Britain. "In order to succeed on a claim of deprivation of procedural due process, a plaintiff must establish that state action deprived him of a protected property or liberty interest." White Plains Towing Corp. v. Patterson, 991 F.2d 1049, 1062 (2d Cir. 1993), cert. denied, 510 U.S. 865, 114 S.Ct. 185, 126 L.Ed.2d 144 (1993)(citing Mathews v.

Eldridge, 424 U.S. 319, 332, 96 S.Ct. 893, 901, 47 L.Ed.2d 18 (1976)).  "To survive a

motion to dismiss, a due process claim under Section 1983 must allege the deprivation

of a constitutional protected interest."  Abramson v. Pataki, 278 F.2d 93, 99 (2d Cir.

2002)(citations omitted).

On September 24, 2002, the plaintiff was suspended for twenty days and placed

on initial probation until October 1, 2004.  (Defendants' Statement of Undisputed Facts,

Paragraph 28)  On October 9, 2002, the plaintiff filed a grievance with respect to his

September 24, 2002, discipline.  (Defendants' Statement of Undisputed Facts,

Paragraph 29)  On September 22, 2003, an arbitration hearing was scheduled

concerning the plaintiff's grievance.  (Defendants' Statement of Undisputed Facts,

Paragraph 52)  At that September 22, 2003, arbitration hearing, the plaintiff's grievance

was withdrawn with prejudice.  (Defendants' Statement of Undisputed Facts, Paragraph

52)  Then on October 7, 2003, the plaintiff executed a General Release and Agreement.

(Defendants' Statement of Undisputed Facts, Paragraphs 61 and 62)

In that Agreement and General Release, the plaintiff agreed to withdraw with

prejudice the grievance he had filed with respect to discipline that was imposed on

September 24, 2002.  (Defendants' Statement of Undisputed Facts, Paragraphs 61 and

62)  In addition, in that Agreement and General Release, the plaintiff and his Union

agreed "that any and all discipline taken against the plaintiff up to and including the

September 24, 2002, discipline would remain a part of his discipline record".

(Defendants' Statement of Undisputed Facts, Paragraph 62)  Again, in that

September 24, 2002, discipline the plaintiff was suspended for twenty days and placed

on initial probationary status until October 1, 2004. (Defendants' Statement of Undisputed Facts, Paragraph 28) Therefore, the plaintiff and his Union agree that he was a probationary employee. As a probationary employee, plaintiff was an at-will employee subject to discharge for any reason. The plaintiff was terminated on March 5, 2004, and therefore, was still on initial probationary status and an at-will employee. The plaintiff's Union filed a grievance concerning the plaintiff's termination, however, the City of New Britain challenged the arbitrability of the grievance on the grounds that the plaintiff was a probationary employee. (Defendants' Statement of Undisputed Facts, Paragraphs 118 and 119) On October 13, 2004, a hearing was scheduled concerning the City of New Britain's claim of non-arbitrability. (Defendants' Statement of Undisputed Facts, Paragraph 120) At that October 13, 2004, hearing, the Union and the plaintiff withdrew the grievance with prejudice signifying their understanding that the plaintiff was a probationary employee. (Defendants' Statement of Undisputed Facts, Paragraph 121)

"A interest that can be terminated 'at the whim of another person' is not protected by the Due Process clause. McPherson v. New York City Department of Education, 2006 WL 1967033 (2006)(citing White Plains Towing Corp. v. Patterson, 991 F.2d 1049, 1062 (1993)). "Employees at will have no protectable property interest in their continued employment." Abramson v. Pataki, 278 F.3d 93, 99 (2002)(citing Goetz v. Windsor Central School District, 698 F.2d 606, 608-9 (2d Cir. 1983); Board of Regents State College v. Roth, 408 U.S. at 578, 92 S.Ct. 2701 (1972)).

The defendants are entitled to judgment as a matter of law with respect to Count Five as the plaintiff did not have a protected property interest as he was an at will employee.

Furthermore, Count Five fails to support a claim against the defendant Joseph Carilli as the defendant Joseph Carilli did not have the authority and did not terminate the plaintiff (Exhibit 27). Rather, the plaintiff's employment was terminated by Personnel Director John R. Byrne. Section 1983 imposes liability for "conduct which 'subjects, or causes to be subjected,' the complainant to a deprivation of rights secured by the Constitution and laws." Rizzo v. Goode, 423 U.S. 362, 370-71 (1976)(quoting 42 U.S.C. §1983). Where damages are sought in a Section 1983 action, the individual defendant must be responsible for the alleged constitutional deprivation. Thus, an allegation of personal involvement is a necessary prerequisite for a valid cause of action under Section 1983, and a plaintiff must demonstrate the defendant's direct or personal involvement in the actions that are alleged to have caused the constitutional deprivation. Rizzo v. Goode, 423 U.S. 362, 376-378 (1976); Williams v. Smith, 781 F.2d 319, 323 (2d Cir. 1986). See Gill v. Mooney, 824 F.2d 192, 196 (2d Cir. 1987).

Consistent with the requirement that personal involvement is required for a claim under Section 1983, the Supreme Court has ruled that the general doctrine of respondeat superior does not suffice to state a claim under Section 1983. Monell v. New York City Dept. of Social Services, 436 U.S. 658, 692-95 (1978). An official cannot be held liable merely because he or she occupies a high position in the

government agency hierarchy.  Colon v. Coughlin, 58 F.3d 865, 874 (2d Cir. 1995).  It

is well settled law that liability cannot be founded on official position alone.  Horowitz

v. Anker, 437 F.Supp. 495, 504 (E.D.N.Y. 1977), aff'd mem. 578 F.2d 1368 (2d Cir.

1978); McKinnon v. Patterson, 568 F.2d 930, 934 (2d Cir. 1977), cert. denied, 434

U.S. 1087 (1977); Williams v. Vincent, 508 F.2d 541, 546 (2d Cir. 1974).

        In order to state a cognizable claim, the plaintiff must allege, and ultimately

prove, "personal involvement of [the defendants] sufficient to support their liability for

wrongful acts," not merely their "linkage in the . . . chain of command."  Ayers v.

Coughlin, 780 F.2d 205, 210 (2d Cir. 1985).  A public official can only be liable if he or

she causes the harm.  Baker v. McCollan, 443 U.S. 137, 142, 99 S. Ct. 2689, 2693

(1979); Vippolis v. Village of Haverstraw, 768 F.2d 40, 44 (2d Cir. 1985).  "[T]here

must be some showing of personal responsibility" to support an individual capacity

damages claim.  Duchesne v. Sugarman, 566 F.2d 817, 830 (2d Cir. 1988); Alfaro

Motors, Inc. v. Ward, 814 F.2d 883, 886 (2d Cir. 1987); Gill v. Mooney, 824 F.2d 192,

196 (2d Cir. 1987); Ayers v. Coughlin, 780 F.2d 205, 210 (2d Cir. 1985).  "A plaintiff

must thus allege a tangible connection between the acts of the defendants and the

injuries suffered."  Bass v. Jackson, 790 F.2d 260, 263 (2d Cir. 1986).

        Although he recommended the plaintiff's termination, the defendant Joseph

Carilli did not terminate the plaintiff's employment as he did not have the authority to

do so, therefore, said defendant is entitled to judgment as a matter of law on Count

Five.

33

6.   **THE PLAINTIFF IS NOT DISABLED WITHIN THE MEANING OF THE AMERICANS WITH DISABILITIES ACT. FURTHERMORE, THERE IS NO CREDIBLE EVIDENCE THAT THE PLAINTIFF WAS DISCRIMINATED AGAINST IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT.**

"In order to set forth a prima facie case under the ADA a plaintiff must show by a preponderance of the evidence that (1) his employer was subject to the ADA; (2) he was disabled within the meaning of the ADA; (3) he was otherwise qualified to perform the essential functions of his job; and (4) he suffered an adverse employment action because of his disability." Mercer v. Burns, 299 F.Supp.2d 21, 27-28 (D.Conn. 2004)(citing Ryan v. Grae & Rybicki, P.C., 135 F.3d 867, 869-70 (2d Cir. 1998)).

"Under the ADA, a plaintiff must prove that he has a physical or mental impairment that substantially limits one or more of his major life activities; that he has a record of such impairment; or that he is regarded by the employer as having such an impairment." Id. at 28 (citing 42 U.S.C. §12102(2)).  Count Six of the plaintiff's complaint alleges that the plaintiff's Hepatitis C caused him to be disabled with the ADA.

The following facts are undisputed:  the plaintiff kept his Hepatitis C confidential (Complaint, Paragraph 8); the defendant Carilli and John R. Byrne, Personnel Director, did not know the plaintiff suffered form Hepatitis C until receipt of Dr. Devers' March 5, 2003, report (Defendants' Statement of Undisputed Facts, Paragraph 44); on December 2, 2002, Dr. Beck, another of plaintiff's physicians, stated "Mr. Baldyga's may work full duty without restrictions" (Complaint, Paragraph 17; Defendants' Answer and Special Defense; Defendants' Statement of Undisputed Facts, Paragraph 41); on December 2, 2002, Dr. Sternstein, plaintiff's physician, stated there was "no medical

34

reason [why] Mr. Baldyga would not be able to perform any of the critical elements of

his position (Complaint, Paragraph 17; Defendants' Answer and Special Defense;

Defendants' Statement of Undisputed Facts, Paragraph 40) on December 17, 2002,

Dr. Feldman sent another letter stating that plaintiff was being treated for a chronic

medical condition, but that the medication "would have no bearing on his work" and

requested that plaintiff be allowed to "return to full-time work with no restrictions"

(Complaint, Paragraph 18; Defendants' Answer and Special Defense; Defendants'

Statement of Undisputed Facts, Paragraph 41) and on March 5, 2003.

The plaintiff is not disabled within the meaning of the ADA as the record shows

that he was not restricted in any major life activity. "A person whose physical or mental

impairment is corrected by medication or other measure does not have an impairment

that presently substantially limits a major life activity." Id. (citing Sutton v. United Air

Lines Inc., 527 U.S. 471, 482-483, 119 S.Ct. 2139 (1999)).

Furthermore, even if the plaintiff is disabled within the meaning of the ADA, the

plaintiff's disability played no role in his termination. (Defendants' Statement of

Undisputed Facts, Paragraphs 79, 90, 91, 93 and 94) As fully discussed in previous

sections, the record clearly reflects that the plaintiff was terminated for his refusal to

adhere to work rules, work performance and his discipline history.

7. **THE PLAINTIFF IS ATTEMPTING TO RE-LITIGATE HIS JUNE 13, 2003, COMMISSION ON HUMAN RIGHTS AND OPPORTUNITIES COMPLAINT AND IS PRECLUDED FROM DOING SO BY THE TERMS OF THE OCTOBER 10, 2003, GENERAL RELEASE AND AGREEMENT INTO WHICH HE ENTERED WITH THE DEFENDANT CITY OF NEW BRITAIN AND BY THE DOCTRINE OF ACCORD AND SATISFACTION.**

In addition, in Count Six the plaintiff is attempting to re-litigate his 2003
Commission on Human Rights and Opportunities charge and he is precluded from
doing so by the terms of the General Release and Agreement by the doctrine of accord
and satisfaction.

On October 7, 2003, the plaintiff, his Union and the City executed a General
Release and Agreement in which the plaintiff released and discharged "the defendant
City of New Britain, Public Works Department, the Public Works Commission and each
of its present and former members, administrators, officers, employees, agents,
attorneys, Common Council, elected or appointed officials or any other persons acting
on their behalf in their official or individual capacity, and successors from any and all
claims, demands and causes of action he ever had to the date of this Agreement and
General Release, but not limited to, claims arising out of his employment with the City of
New Britain" and from all claims under the Americans with Disabilities Act, Title VII, 42
U.S.C. §1983 and 31-51q of the Connecticut General Statutes.  (Defendants' Statement
of Undisputed Facts, Paragraph 61)

"Where the parties to a dispute have entered into a valid settlement agreement to
pending litigation, that agreement will be enforced by the Court." DiMartino v. City of
Hartford, 636 F.Supp. 1241, 1244 (D. Conn. 1986)(citations omitted).  "A valid
settlement agreement will be held to bar those parties on the underlying claim." Id.
(citations omitted)  It is settled in Connecticut that "[w]hen there is a good faith dispute
about the existence of a debt or about the amount that is owed, the common law
authorizes the debtor and the creditor to negotiate a contract of accord to settle the

outstanding claim . . . .  An accord is a contract under which an oblige promises to accept a stated performance in satisfaction of the obligor's existing duty . . . .  Upon acceptace of the offer of accord, the creditor's receipt of the promised payment discharges the underlying debt and bars any further claim relating thereto, if the contract is supported by consideration".  B & B Bail Bonds Agency of Connecticut, Inc. v. Bailey, 256 Conn. 209, 212 (2001); Cadle Co. v. Ginsberg, 70 Conn. App. 748, 762 (2002)(citations and internal quotation marks omitted).  The plaintiff entered into a valid settlement agreement and released the defendants from any and all claims up to October 7, 2003.  Therefore, the plaintiff is precluded from re-litigating his June 13, 2003, Commission on Human Rights and Opportunities complaint and all of the allegations related thereto.

**8.    THE DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY.**

Under the doctrine of qualified immunity, City officials performing discretionary functions are shielded from liability for civil damages if their conduct either "did not violate clearly established rights of which a reasonable person would have known," or "it was objectively reasonable to believe that [his] acts did not violate [those] clearly established rights." Young v. County of Fulton, 160 F.3d 899, 903 (2d Cir. 1998) (citations omitted). See Saucier v. Katz, 533 U.S. 194, 200-201 (2001); Brown v. City of Oneonta, 106 F.3d 1125, 1130-31 (2d Cir. 1997).  Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985).  The privilege is "an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case

is erroneously permitted to go to trial." Id. Thus, the Supreme Court has "repeatedly stressed the importance of resolving immunity questions at the earliest possible stage in litigation." Hunter v. Bryant, 502 U.S. 224, 227 (1991)(per curiam).

In order to prevail on an action for damages under Section 1983 against a government official, a plaintiff must demonstrate that the official violated "clearly established statutory or constitutional rights of which a reasonable person would have known." Conn v. Gabbert, 526 U.S. 286, 290 (1999)(quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  Thus, the two-step inquiry requires first, whether the plaintiffs allege a violation of a constitutional right, and then second, whether that right was "clearly established" at the time of the alleged violation.  Saucier v. Katz, 533 U.S. 194, 200-201 (2001); Gabbert, 526 U.S. at 290.  After this test is met, the qualified immunity defense "protects a government actor if it was 'objectively reasonable' for him to believe that his actions were lawful at the time of his challenged act." Cerrone v. Brown, 246 F.3d 194, 199 (2d Cir. 2001)(citing Anderson v. Creighton, 483 U.S. 635, 641 (1987)).  See Malley v. Briggs, 475 U.S. 335, 341 (1986)(qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law").  See also Munato v. Metropolitan Transp. Authority, 285 F.3d 201 (2002).

As has been discussed, none of the actions taken by any of the defendants would, even with all deference granted to the plaintiff, constitute an allegation of a violation of a constitutional right.  Moreover, even if, by some extreme stretch a constitutional violation could be found, there are no allegations that a reasonable official in the positions of the defendants would be on notice that their actions were

38

unconstitutional.  The defendants could not have known that by expecting the plaintiff to comply with work rules they were violating his constitutional rights.  Accordingly, the defendants are entitled to qualified immunity.

DEFENDANTS

By Office of Corporation Counsel


Mary Q. Pokorski
Attorney for Defendants
Office of Corporation Counsel
City of New Britain
27 West Main Street
New Britain, Connecticut 06051
Tel. (860) 826-3420
Fax  (860) 826-3397
mpokorski@ch.ci.new-britain.ct.us
Federal Bar Number ct18903

## CERTIFICATION

I hereby certify that on September 27, 2007, a copy of the foregoing

Memorandum of Law in Support of the Defendants' Motion for Summary Judgment was

filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of

the Court's electronic filing system. Parties may access this filing through the Court's

system.

Craig T. Dickinson, Esq.
Madsen, Prestley & Parenteau, LLC
44 Capitol Avenue
Hartford, Connecticut 06106


Mary C. Pokorski
Attorney at Law